## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | ) | Civil Action |
| | ) | |
| **[UNDER SEAL],** | ) | Jury Trial Requested |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **Filed Under Seal Pursuant to** |
| | ) | **31 U.S.C. § 3730(B)(2)** |
| **[UNDER SEAL]** | ) | |
| | ) | |
| | ) | **FIRST AMENDED COMPLAINT** |
| Defendant. | ) | |
| _____ | ) | |

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA AND STATE OF NEW YORK | ) | Index No. 17-cv-7163 |
| | ) | |
| Plaintiffs, | ) | Jury Trial Requested |
| | ) | |
| *ex rel.* | ) | |
| | ) | **Filed Under Seal Pursuant to** |
| SONER YASTI, | ) | **31 U.S.C. § 3730(B)(2)** |
| | ) | |
| Relator, | ) | FIRST AMENDED COMPLAINT |
| | ) | FOR VIOLATIONS OF THE |
| v. | ) | FEDERAL FALSE CLAIMS ACT, 31, U.S.C. |
| | ) | § 3729 ET SEQ.; NEW YORK FALSE |
| NAGAN CONSTRUCTION AND NADIR UYGAN | ) | CLAIMS ACT, N.Y. STATE FIN. § 187 *ET SEQ.* |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff and Relator Soner Yasti ("Relator"), by and through his attorneys, brings this action on behalf of the United States of America and New York State pursuant to the *qui tam* provisions of the Federal False Claims Act, 31 U.S.C. §§ 3729-3733, and the New York State False Claims Act, N.Y. State Fin. § 187 *et seq.*, against Nagan Construction, Inc. and Nadir Uygan ("Defendants") to recover all damages, penalties and other remedies provided by the False Claims Act. In support thereof, Relator alleges as follows:

I.     <u>NATURE OF THE CASE</u>

1.     Relator brings this action to recover for false claims resulting from Defendants Nagan Construction and Nadir Uygan's fraudulent inducement of government contracts with the representation that it would comply with federal and state laws and contractual requirements regarding its payment of employees. Specifically, Defendant failed to pay its employees the prevailing wage, failed to pay them overtime payments, and in some cases failed to pay them at

all in violation of the Davis-Bacon Act, the Contract Work Hours and Safety Standards Act, the Copeland Anti-Kickback Act, and New York State prevailing wage laws.

2.      Defendants continued to submit claims for payment to the federal and New York State government ("Government") that reflected false classification of employees as laborers even though they were performing higher-paid functions.

3.      Defendants also fraudulently underpaid taxes by failing to report the income they received in the form of services that they did not pay for. Defendants also fraudulently took business deductions for the wages provided to Nagan Construction employees, even though these payments were illegal under federal and state law.

## II.    PARTIES

4.      Relator and Original Source **Soner Yasti** is a resident of New Jersey. He was a Project Manager/Superintendent at Nagan Construction from May 2004 to January 2014. Relator personally witnessed the fraudulent conduct at Nagan. Relator is a resident of Hudson County, NJ.

5.      Defendant **Nagan Construction, Inc.** is a construction company based in New York. Nagan Construction's address is 226 Wanser Ave, Inwood, NY, United States 11096.

6.      Defendant **Nadir Uygan** is the Chief Executive Officer of Nagan Construction and resides at 226 Wanser Ave, Inwood, New York, 11096.

## III.    JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730, and parallel provisions of the State False Claims Acts.

8. This Court has personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a), which provides for nationwide service of process. Further, Defendants have at least minimum contacts with the United States.

9. Venue is proper in this Court pursuant 31 U.S.C. § 3732(a), because Defendants can be found in, reside in, and/or have transacted and continue to transact business in the Southern District of New York.

## IV.    STATUTORY AND REGULATORY BACKGROUND

### A.    The False Claims Act

10. The federal False Claims Act ("FCA") holds liable anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" by the United States, 31 U.S.C. § 3729(a)(1)(A), or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id*. § 3729(a)(1)(B). Those who violate the FCA are liable for civil penalties of up to $21,562.80 per violation, three times the damages sustained by the Government, and litigation costs. *See id*. § 3729(a)(1), (3).

11. The New York State False Claims Act ("NYSFCA") holds liable anyone "who knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval," by New York State, N.Y. State Fin. § 189(1)(a) or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *Id.* § 189(1)(b), or "knowingly conceals or knowingly and improperly avoids or decreases  an obligation to pay or transmit money or property to  the  state  or  a local  government." *Id.* § 189(1)(c). Those who violate the NYSFCA are liable for civil penalties of at least $6,000 and up to $12,000 per violation, three times the damages suffered by the state or local government, and litigation costs. *Id.* § 189(1)(h).

12. The FCA and NYSFCA provide that a person with knowledge of false or fraudulent claims or records presented to the United States may bring a private (*qui tam*) action on behalf of both the person (the "relator") and the Government, and may share in any recovery of money by or on behalf of the United States in the action. A prevailing relator is also entitled to attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d), N.Y. State Fin. § 192.

**B.     Davis-Bacon Act**

13. The Davis-Bacon Act, 40 U.S.C. § 276(a), requires that all workers on federally funded or assisted constructions projects in excess of $2,000 should be paid a "prevailing wage."

14. The Department of Labor sets the prevailing wage, in a "General Wage Determination." The wages vary based upon the location of a project, the type of project, and the type of work performed. For example, different prevailing wages are set for electricians, brick layers, and laborers.

15. The Davis Bacon Act requirements are incorporated into federal contracts and agreed to by the contractors.

**C.     The Contract Work Hours and Safety Standards Act**

16. The Contract Work Hours and Safety Standards Act requires that employers pay laborers and mechanics at least a time and a half for all hours worked in excess of 40 hours in a workweek.

17. A contractor found to be in violation of the Contract Work Hours and Safety Standards Act is subject to a penalty of $25 per worker per day that it is in violation. 29 CFR 5.5(b)(2) and 29 CFR 5.8(a).

18. Government contractors are also required to post a poster describing employee rights under the Davis-Bacon Act and Contract Work Hours and Safety Standards Act.

**D.      The Copeland Anti-Kickback Act**

19.      The Copeland Anti-Kickback Act states that "[w]hoever, by force, intimidation, or threat of procuring dismissal from employment, or by any other manner whatsoever induces any person employed in the construction, prosecution, completion or repair of any public building, public work, or building or work financed in whole or in part by loans or grants from the United States, to give up any part of the compensation to which he is entitled under his contract of employment, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 874.

**E.      New York Prevailing Wage Law**

20.      New York State Labor Law § 220 mandates that workers on state-funded construction projects should be paid the prevailing wage. The State Department of Labor establishes prevailing wages for most localities. In New York City, the City's Office of the Comptroller sets the prevailing wage.

21.      In addition to setting the wage for workers, the prevailing wage rules also require that employees be paid overtime for any work-day in which they work in excess of eight hours. Moreover, on construction projects, employees are not permitted to work more than eight hours a day or five days a week, except in cases of extraordinary emergency. N.Y. Labor Law § 220.

22.      The prevailing wage regulations also require employers to pay fringe benefits to employees. These benefits may be paid as supplemental payments to the employees or as contributions to a benefit plan. N.Y. Labor Law § 220.

23.      Every contractor, and sub-contractor, is required to submit to the Contracting Agency within thirty days after issuance of its first payroll, and every thirty days thereafter, a transcript of the original payroll record, subscribed and sworn to or affirmed as true under the

penalties of perjury. Any person who willfully fails to file such payroll records with the department of jurisdiction is guilty of a class E felony. In addition, any person who willfully fails to file such payroll records within the time provided is subject to a civil penalty of up to one thousand dollars per day. N.Y. Labor Law § 220.

24.     The law also mandates that "every contract for a public work project shall contain a term stating that the filing of payrolls" as described in the above paragraph "is a condition precedent to payment of any sums due and owing to any person for work done upon the project." N.Y. Labor Law § 220.

**F.     New York Business Income Tax**

25.     Businesses in New York are required to pay tax on their "entire net income." Tax Law §210. The entire net income for purposes of New York tax is the same as the federal taxable income of the business with some New York specific exceptions. *Id.* § 208(9).

26.     § 61(a) of the Internal Revenue Code defines gross income to include "all income from whatever source derived." Treasury Regulation § 1.61‑1(a) provides that "[g]ross income includes income realized in any form, whether in money, property, or services. Income may be realized, therefore, in the form of services . . . as well as in cash."

27.     The value of services provided are measured by their fair market value. Where a business receives services that it does not pay fair market value for, it is required to recognize those services as income.

28.     Section 162(c)(2) of the Code disallows business expense deductions "for any payment . . . made, directly or indirectly, to any person, if the payment constitutes an . . . illegal payment" under any federal law or "generally enforced" state law that, in pertinent part, "subjects the payor to a criminal penalty."

29.     New York Labor Law states that contractors who fail "to pay to any service employee the wages stipulated" by the Labor Law are "guilty of a misdemeanor and upon conviction shall be punished for a first offense by a fine of five hundred dollars or by imprisonment for not more than thirty days or by both fine and imprisonment." N.Y. Labor Law § 238.

30.     The Copeland Anti-Kickback Act states that a person who induces an employee in a public construction project "to give up any part of the compensation to which he is entitled under his contract of employment, shall be fined under this title or imprisoned not more than five years, or both."  18 U.S.C. § 874.

**G.     Obligation to Transmit Income Taxes to the Government**

31.     New York State law requires employers to "deduct and withhold from . . .  wages for each payroll period a tax computed in such manner as to result, so far as practicable, in withhold from the employee's wages during each calendar year an amount substantially equivalent to the tax reasonably estimated to be due." N.Y. Tax Law § 671.

32.     The law requires employers to make quarterly payments of the withheld taxes, and file quarterly reports, known as the NYS-45. Employers must state the number of full-time and part-time workers that worked during the period, and the wages paid to each employee.

33.     The form must be signed by the president, treasurer or other principal officer of the company. The form states that "the signature certifies that the information contained in this return is true and correct, and that the remuneration reported represents all remuneration paid during this calendar quarter for employment covered by the law."

34.     An employer that willfully fails to collect and pay the taxes is liable for penalties, the total amount evaded, and interest on the amount owed. N.Y. Tax Law § 685(g).

35.     Employers are also required to pay premiums to New York State for unemployment insurance for their employees. The premiums are based upon the salary that is paid to the employees. N.Y. Labor Law § 570.

36.     If an employer's failure to comply with unemployment insurance reporting requirements is determined to be due to fraud with the intent to avoid payment, 50% of the total amount of the deficiency may be assessed and collected in the same manner as if it were additional contributions due. *Id.*

37.     The NYS-45 form requires employers to perform a calculation of the amount of premiums owed based upon the salary reported on the form.

V.     **FACTUAL ALLEGATIONS**

A.     **Nagan Construction Failed to Pay its Employees the Mandated Wages in Violation of its Contracts with the Government.**

1.     **Nagan Construction Failed to Pay its Employees the Prevailing Wages.**

38.     During his time at the Company, Relator realized that the Company did not pay its workers the prevailing wage as a matter of course. Nagan Construction categorized all of its employees as laborers. As the project lead, Relator was aware that the workers were performing higher level functions than for which they were being paid.

39.     Nagan Construction bid on Government construction contracts that were granted to the lowest bidder. By paying its workers less than the prevailing wage, Nagan was able to bid lower on Government projects than its competitors. During the bids, the Government agencies made it clear that the contracts were required to follow prevailing wage laws and therefore could assume that the bids were based upon that cost.

40.     Nagan Construction was clearly aware of the prevailing wage requirements that it was failing to observe. In 2000, Nagan Construction and Nadir Uygan were charged with a Scheme to Defraud and Offering a False Instrument for Filing because they failed to pay employees prevailing wages on five City Construction projects, and for falsely certifying to New York City that they had paid the prevailing wage. Ex. A. The charge carried up to a four-year prison sentence and substantial fines. Despite this charge, Nagan Construction has not changed its practices.

41.     As the project manager on Nagan Construction's projects, Relator witnessed the work performed by employees. At the end of the day, Relator regularly submitted "daily reports" that would document the work performed on the project. These reports were sent to the head office.

42.     Defendant's payroll and reports to the Government were processed by a program called "Master Builder." This program generated reports and bills to the Government that reflected the work performed by Nagan Construction.

43.     Nagan Construction sent monthly reports to the Government called G-702 or G-703 forms which described the work performed that month. Nagan also attached payroll reports to the form that reflected the false classification of the workers as laborers and incorrectly represented the hours worked by them. Relator personally saw the false classifications of workers on the documents that were submitted to the Government.

44.     On June 28, 2012, the U.S. Merchant Marine Academy opened an invitation for bids for the renovation of the Delano Hall dining facility at the Merchant Marine Academy in Kings Point, New York. The first page of the Invitation for Bids stated that "Davis-Bacon Act is applicable, reference FAR Clause 52.226-6 Davis Bacon Act." Ex. B. The renovation included "kitchen finishes, the electrical, fire protection, mechanical, plumbing, air conditioning and building control systems."

45.     The Contract Clauses include: 52.222-4 Contract Work Hours and Safety Standards Act - Overtime Compensation. (JUL 2005), which refers to 48 CFR 52.222-4. That regulation states that "[n]o Contractor or subcontractor employing laborers or mechanics . . . shall require or permit them to work over 40 hours in any workweek unless they are paid at least 1 and 1/2 times the basic rate of pay for each hour worked over 40 hours."

46.     The Contract Clauses include 52.222-8 - Payrolls and Basic Records., which refers to 48 CFR 52.222-8. That regulation states that "[t]he Contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to the Contracting Officer." 48 CFR 52.222-8 (b)(1).  The contractor is also required to certify "[t]hat each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the contract." 48 CFR 52.222-8 (b)(2)(iii).

47.     The Contract Clauses include 52.222-10 - Compliance with Copeland Act Requirements, which refers to 48 CFR 52.222-10. That regulation incorporates 29 CFR Part 3, which require compliance with the Copeland Anti-Kickback Act. They require that the contractor provide the contracting agency with a weekly statement of wages paid to employees, and prohibit any unauthorized payroll deductions.

48.     On August 25, 2012, Nagan Constructions was awarded the contract after it submitted the lowest bid at $6,249,000. Ex. C. The next lowest bid was $6,297,000. Because Nagan Construction did not pay its employees the prevailing wage as a matter of course, it knew at the time that it submitted the bid that it would not be following the terms of the contract.

49.     Despite the clear instructions, Nagan did not pay its employees the prevailing wage. Employees who performed work as carpenters and masons were paid as laborers.

50.     Several employees—H.T., S.Y., and A.O. —told Relator that they were not being paid the prevailing wage during their work on this project. Nagan Construction misclassified these workers as laborers even though they were creating sheetrock partition walls, operating Bobcats, and performing concrete masonry unit blockwork; all tasks that are performed by carpenters and masons. Relator recorded the work being performed in his daily reports.

51.     Relator confronted Mr. Uygan regarding the failure to pay workers the prevailing wage during this project. He said the workers were not getting paid the wages that were required, but Uygan would not commit to complying with the law.

52.     Nagan Construction billed the Government for its work on the project on a monthly basis, even though it was not complying by the terms of the contract.

53.     Nagan Construction similarly failed to pay workers the prevailing wage for New York State contracts. While working on a contract to re-build Jacobi Children Psychiatric Center, Relator discovered that carpenters and masons on that project were being classified as laborers. The workers were paid as laborers even though they performed tasks such as creating sheetrock walls and ceilings, installing doors and doorframes, performing block work, and operating Bobcat equipment. The workers on this project included N.H., P.P., H.S., H.S., R.S., and C.K.

54.     Relator confronted Mr. Uygan regarding the failure to pay workers the prevailing wage during this project. He said the workers were not getting paid the wages that were required, but Uygan would not commit to complying with the law.

55.     Nagan Construction also misclassified its workers and failed to pay them the prevailing wage on other State projects, including noise abatement projects at McClancy High School and St. Joachim School. At these projects, workers who performed tasks such as flooring, installing sheetrock walls, ceiling work, painting, masonry work, and Bobcat operation were paid

as laborers.  N.H., P.P., H.S., H.S., R.S., and C.K. all performed this higher-level work but were not paid appropriately.

56.     During a project to renovate the Sagamore Children Psychiatry Center, N.H., P.P., H.S., H.S., R.S., and C.K. performed higher-level work including installing sheetrock walls, ceiling work, painting, masonry work, Bobcat operation, concrete masonry unit blockwork, painting, and installation of door frames and doors. However, they were paid as laborers.

57.     Relator confronted Mr. Uygan regarding the failure to pay workers the prevailing wage during this project. He said the workers were not getting paid the wages that were required, but Uygan would not commit to complying with the law.

58.     During performance of a contract with the State for extension to the visitor center and a complete renovation at Jamaica Bay, workers performed tile work, carpentry, flooring, painting, and Bobcat operation. However, they were only paid the laborer rate.

59.     For all the State projects, Nagan Construction submitted monthly reports with payrolls for the employees that falsely reflected a classification of laborers.

**2.  Nagan Construction Failed to Pay its Employees Overtime.**

60.     In addition to failing to pay workers the prevailing wage mandated by contracts, Nagan Construction also failed to pay its workers overtime.

61.     Relator's job responsibilities included documenting the time that Nagan employees were performing their work. Relator routinely saw workers on the U.S. Marine Merchant Academy project work nine hours a day, but they were paid for only eight hours of work.

62.     Nagan Construction followed the same practices on projects for New York State. For example, workers were never paid for overtime work performed at the noise abatement

projects at McClancy High School and St. Joachim School, and the project to renovate the Sagamore Children Psychiatry Center.

### 3. During Some Contracts, Nagan Construction Failed to Pay its Employees Any Wages.

63.    In addition to misclassifying workers and failing to pay overtime, on several occasions, Defendants simply failed to pay them at all. Relator was not paid for his work on several projects, including on the McClancy High School Noise Abatement project, the Sagamore Children Psychiatric Center project, and the Jamaica Bay Wildlife Refuge project. For about a year and a half, Relator was not paid for his work. When he spoke with Mr. Uygan, he was promised payment in the future, but was never paid. One of Relator's colleagues was also not paid, and the workers on these projects were also frequently not paid on time.

64.    Nagan Construction continues to bid for and receive Federal and State government project, adding up to tens of millions of dollars. For example, Nagan Construction has won awards with the Department of Labor in 2014 for $13.3 million, with the Department of Interior in 2015 for $11.1 million, and with the Department of Interior in 2016 for $4.7 million. Upon information and belief, Defendants have continued to falsely represent that they pay workers the prevailing wage on these projects.

65.    Nagan Construction has also bid on and received several other contracts – worth millions – with the New York State Office of General Services. For example, Nagan Construction has received contracts to restore flood-damaged building systems in Brooklyn, upgrade electrical systems, replace doors, and provide security at the Farmingdale New York State Police, and repair a boardwalk damaged by Hurricane Sandy at Robert Moses State Park.

**B.** **Nagan Construction Failed to Pay Income Taxes on the Services it Received for Below Market Value and Inappropriately Took Deductions for Illegal Payments.**

66. Because Nagan Construction failed to pay its workers the minimum wages required by state and federal law (that is, the appropriate prevailing wage), it received their services for less than their fair market value.

67. Even though these services provided for less than fair market value constituted income, upon information and belief, Nagan Construction failed to report this income on its state taxes.

68. Because Nagan Construction's wages were in violation of criminal provisions of New York Labor Law and the Copeland Anti-Kickback Act, these payments were illegal and not allowable as business expenses.

69. Even though the payments to workers were illegal, upon information and belief, Nagan Construction deducted them as business expenses when filing its taxes.

**C.** **Nagan Construction Paid its Employees in Cash in Order to Avoid Withholding and Transmitting Taxes to the Government.**

70. During his employment, Relator witnessed Defendants paying some employees in cash. These employees were handed envelopes of paper bills for their income, rather than being paid by check or direct deposit.

71. Specifically, Relator witnessed Nadir Uygan paying employees who performed concrete work at the U.S. Merchant Marine Academy project on the worksite with envelopes of cash. Nadir Uygan told Relator that the envelopes had cash in them.

15

72.     Typically, Nagan employees picked up paychecks from the office, so the payment by Nadir Uygan on the worksite was unusual.

73.     Upon information and belief, Defendants did not withhold or transmit income taxes for the income paid to these employees in cash.

74.     Upon information and belief, Defendants did not report this income on their Quarterly NYS-45 forms.

75.     Upon information and belief, Defendants underpaid their workers' compensation insurance premiums by failing to include the amounts paid to employees in cash.

**VI.     COUNTS**

**COUNT I**

**Defendants Presented False Claims to the Government**
**(False Claims Act, 31 U.S.C. § 3729(a)(1)(A))**

76.     Relator re-alleges and incorporates by reference the allegations in the previous paragraphs of this Complaint.

77.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729-3732.

78.     By virtue of the acts described above, Defendants knowingly submitted, caused to be submitted, and continue to submit and to cause to be submitted false or fraudulent claims for payment by the United States, by knowingly or recklessly submitting claims to the Government that were tainted by Defendants' failure to pay its employees the appropriate wages, overtime and the prevailing wage, in violation of the Davis-Bacon Act.

79.     The United States, unaware of Defendants' failure to comply with the Davis-Bacon Act, granted Defendants construction contracts and paid Defendants' claims.

80.     The falsity of the claims presented by Defendants was material, as the falsity

16

concealed material violations of the Davis-Bacon Act that would have justified denial of the claims in their entirety. Had Federal officials known of Defendants' violations, the Government would not have granted Defendants the government contracts or paid Defendants for the goods and services furnished as a result of the violations.

81.     Defendants' knowing presentation of false claims for payment by the United States has violated 31 U.S.C. § 3729(a)(1)(A) and has damaged, and continues to damage, the United States in an amount to be determined at trial.

## COUNT II

### Defendants Made False Statements to the Government
### (False Claims Act, § 3729(a)(1)(B))

82.     Relator re-alleges and incorporates by reference the allegations in the previous paragraphs of this Complaint.

83.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729-3732.

84.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material fact, to induce the Government to approve and pay false and fraudulent claims.

85.     Defendants' knowing false statements to the United States has violated 31 U.S.C. § 3729(a)(1)(B) and has damaged, and continues to damage, the United States in an amount to be determined at trial.

## COUNT III

### Defendants Presented False Claims to the Government
### (N.Y. State Finance Law § 189(1)(a))

86.     Relator re-alleges and incorporates by reference the allegations in the previous

paragraphs of this Complaint.

87.     This is a claim for treble damages and penalties under the New York State False Claims Act, NY State Finance Law § 187 *et seq*.

88.     By virtue of the acts described above, Defendants knowingly submitted, caused to be submitted and continue to submit and to cause to be submitted false or fraudulent claims for payment by New York State, by knowingly or recklessly submitting claims to the Government that were tainted by Defendants' failure to pay its employees the appropriate wages, overtime, and the prevailing wage, in violation of the New York Labor Law § 220.

89.     New York State, unaware of Defendants' failure to comply with the New York Labor Law, granted Defendants construction contracts and paid Defendants' claims.

90.     The falsity of the claims presented by Defendants was material, as the falsity concealed material violations of the New York Labor Law that would have justified denial of the claims in their entirety. Had Government officials known of Defendants' violations, the Government would not have granted Defendants the government contracts or paid Defendants for the goods and services furnished as a result of the violations.

91.     Defendants' knowing presentation of false claims for payment by New York State has violated NY State Finance Law § 187 *et seq*. and has damaged, and continues to damage, New York State in an amount to be determined at trial.

## COUNT IV

### Defendants Made False Statements to the Government
### (N.Y. State Finance Law § 189(1)(b))

92.     Relator re-alleges and incorporates by reference the allegations in the previous paragraphs of this Complaint.

93.     This is a claim for treble damages and penalties under the New York State False

Claims Act, NY State Finance Law § 187 *et seq*.

94.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material fact, to induce the Government to approve and pay false and fraudulent claims.

95.     Defendants' knowing false statements to New York State has violated NY State Finance Law § 187 *et seq*. and has damaged, and continues to damage, New York State in an amount to be determined at trial.

**COUNT V**

**Defendants Violated the Reverse False Claims Provision of the New York False Claims Act (N.Y. State Fin. § 189(1)(h))**

96.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

97.     As a result of the foregoing conduct, Defendants knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of New York, in violation of N.Y. State Fin. § 189(1)(h).

98.     Defendants knowingly and improperly withheld income tax payments knowing that it had an obligation to remit such payments.

99.     Defendants had knowledge (as defined by N.Y. State Fin. § 187 *et seq*.) of its obligations to make these tax payments as a business.

100.     As a result of the Defendants' actions as set forth above in this Complaint, the State of New York has been, and continues to be, severely damaged.

**VII.   PRAYER**

WHEREFORE, Relator prays for judgment against Defendants as follows:

A.     An order that Defendants cease and desist from violating the Davis-Bacon Act and NY Labor Law § 220;

B.     Judgment against Defendants in an amount equal to three times the damages the United States and New York have sustained because of Defendants' fraud, plus a civil penalty of $21,562.80 for each claim submitted in violation of the False Claims Act, under 31 US.C. § 3729(a) and $12,000 for each claim submitted in violation of the New York State False Claims Act, N.Y. State Finance Law § 189;

C.     An award to Relator of the maximum share of money recovered from Defendants by, or on behalf of, the United States and New York State, under 31 U.S.C. § 3730(d)(2) and N.Y. State Finance Law § 189 *et seq.*;

D.     An award to Relator of "reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs," under 31 U.S.C. § 3730(d)(1); and N.Y. State Finance Law § 189 *et seq.*;

E.     Such other relief as the Court deems just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: December 8, 2017

Respectfully submitted,

Ross B. Brooks (Bar No. 3001146)
Inayat Ali I. Hemani (Bar No. 5096276)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY  10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
rbrooks@sanfordheisler.com
ihemani@sanfordheisler.com

Deborah K. Marcuse (Bar No. 4799649)
**FEINSTEIN DOYLE PAYNE &
KRAVEC, LLC**
429 Fourth Avenue, Suite 1300
Pittsburgh, PA 15219-1639
Telephone: (412) 281-8400
Facsimile: (412) 281-1007
dmarcuse@fdpklaw.com

*Attorneys for Relator*