GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By:     JEFFREY K. POWELL
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel.: (212) 637-2706
Email: jeffrey.powell@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF NEW YORK *ex rel.* SONER YASTI,<br><br>    Plaintiffs,<br><br>    v.<br><br>NAGAN CONSTRUCTION and NADIR UYGAN,<br><br>    Defendants. | **17 Civ. 7163 (AT)**<br><br>**COMPLAINT-IN-INTERVENTION OF THE UNITED STATES OF AMERICA**<br><br>**JURY TRIAL DEMANDED** |
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Intervenor,<br><br>    v.<br><br>NAGAN CONSTRUCTION, INC.,<br><br>    Defendant. | |

Plaintiff the United States of America (the "United States" or the "Government"), by its

attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York,

alleges for its Complaint-In-Intervention as follows:

## PRELIMINARY STATEMENT

1.     The Government brings this civil fraud lawsuit seeking damages and penalties

against Nagan Construction, Inc.  ("Nagan" or "Defendant") under the False Claims Act,

31 U.S.C. §§ 3729 *et seq.* (the "FCA").  During the period September 2012 through February

2018, Nagan knowingly underpaid employees who worked on two federally-funded construction

projects by failing to pay them the prevailing wage as required by federal law, and also

submitted false certified payroll records that inaccurately classified the work performed by these

employees as being less skilled than the work actually performed.

2.     Specifically, Nagan failed to comply with the prevailing wage requirements of the

Davis-Bacon Act  (the "DBA") by routinely paying employees the prevailing wage rate

applicable to "laborer" work — which typically involves unskilled tasks such as cleaning and

transporting materials and equipment — when the employees had performed skilled work, such

as carpentry and bricklayer tasks, which entitled them to a substantially higher prevailing wage

rate.  When requesting payments from the federal contracting agencies, Nagan knowingly

submitted false certified payroll records that misclassified thousands of hours of work performed

by Nagan employees and falsely represented that the employees had been paid the applicable

prevailing wage rates for the projects.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the claims pursuant to 31 U.S.C. § 3730(a) and

28 U.S.C. §§ 1331 and 1345.

4.     This Court may exercise personal jurisdiction over Nagan pursuant to 31 U.S.C.

§ 3732(a).

5.    Venue lies in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C.
§ 1391(b) because Nagan transacts business in this District and a substantial part of the acts complained of took place in this District.

## PARTIES

6.    Plaintiff is the United States of America.

7.    Relator Soner Yasti is a former employee of Nagan and resides in New Jersey. In September 2017, Relator filed an action pursuant to the FCA alleging, *inter alia*, that Nagan failed to pay its employees prevailing wages for work performed on federally-funded contracts as required by the DBA and submitted false certified payroll reports.

8.    Defendant Nagan is a construction company with a principal place of business in Inwood, New York. Nagan has entered into construction contracts with multiple federal agencies.

## STATUTORY BACKGROUND

**I.    The False Claims Act**

9.    The FCA establishes treble damages liability to the United States for an individual who, or entity that, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A); or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B).

10.    "Knowingly" is defined to include actual knowledge, reckless disregard, and deliberate indifference. 31 U.S.C. § 3729(b)(1). No proof of specific intent to defraud is required. *Id.*

11.    In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or each false claim.

3

II.     **The Davis-Bacon Act**

12.     The DBA requires workers on federally-funded construction projects in excess of $2,000 to be paid the local "prevailing wage." *See* 40 U.S.C. §§ 3141 *et seq.*

13.     For federally-funded construction projects, the Department of Labor ("DOL") issues wage determinations setting forth the applicable local prevailing wages for different work classifications (*e.g.*, laborer, bricklayer, electrician).  The applicable wage rates can be based upon the location of the project, the type of project, and the nature of the work to be performed.

14.     The DBA requirements and applicable wage determinations are incorporated into federally-funded construction contracts and are agreed to by the construction company.

III.    **The Copeland Anti-Kickback Act**

15.     As is relevant here, the Copeland Anti-Kickback Act requires contractors on federally-funded construction projects in excess of $2,000 to submit certified payroll records to the federal contracting agency reflecting the employees who worked on a project each day, the hours each employee worked, the classification of the work performed, and the rate and total amount each employee was paid. *See* 40 U.S.C § 3145; 29 C.F.R. §§ 3.3, 3.4.

## FACTUAL ALLEGATIONS

I.      **The Delano Hall Renovation Project**

16.     In 2012, Nagan entered into a contract with the United States Merchant Marine Academy ("USMMA") to renovate a dining facility called Delano Hall located in Kings Point, New York (the "Delano Hall Project").

17.     The Delano Hall Project involved, among other things, substantial interior renovations, interior finishing, the creation of a new roof, the replacement of windows, the installation of new food service equipment, and the installation of new mechanical, electrical, plumbing, and fire protections services.

4

18.     Under the contract for the Delano Hall Project, Nagan was required to pay workers the prevailing wage rates set forth in the wage determination for the classification of work performed. *See* 29 C.F.R. § 5.5(a); 48 C.F.R. § 52.222-6(b). Nagan was also required to submit weekly payroll reports and to certify that each worker "has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the contract." *See* 29 C.F.R. § 5.5(a)(3); 48 C.F.R. § 52.222-8(b).

19.     Nagan served as the prime contractor on the Delano Hall Project and hired subcontractors to perform specific work.

20.     The Delano Hall Project began in or around September 2012 and was completed in or about March 2015.

## II.     The South Bronx Job Corps Center Project

21.     In 2014, Nagan entered into a contract with the DOL to renovate the South Bronx Job Corps Center located in Bronx, New York ("Job Corps Center Project").

22.     The Job Corps Center Project involved, among other things, interior modifications, repointing brick and stone, the removal and reattachment of decorative stone elements, the replacement of steel lintels, the installation of new roofing material and window frames, the replacement of ceilings, the installation of a new heating, ventilation, and air conditioning system, and upgrading electrical equipment.

23.     Under the contract for the Job Corps Center Project, Nagan was required to pay workers the prevailing wage rates set forth in the wage determination for the classification of work performed. *See* 29 C.F.R. § 5.5(a); 48 C.F.R. § 52.222-6(b). Nagan was also required to submit weekly payroll reports and to certify that each worker "has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work

5

performed, as specified in the applicable wage determination incorporated into the contract."

*See* 29 C.F.R. § 5.5(a)(3); 48 C.F.R. § 52.222-8(b).

24.     Nagan served as the prime contractor on the project and hired subcontractors to

perform specific work.

25.     The Job Corps Center Project began in or around December 2014 and was

completed in or about February 2018.

### III.   Nagan Failed to Pay Its Employees the Applicable Prevailing Wages and Submitted False Certified Payroll Reports Misclassifying the Nature of Work They Performed on the Delano Hall Project and the South Bronx Job Corps Center Project.

26.     Nagan routinely underpaid employees who performed skilled work on the Delano

Hall Project and the Job Corps Center Project by paying them as if they had performed unskilled

work, in violation of the DBA, and then submitted false certified payroll reports to the federal

contracting agencies misclassifying the work done.

27.     As noted above, Nagan agreed to, and was required to, comply with the DBA and

to pay its employees prevailing wages, as set forth in wage determinations issued for the Delano

Hall Project and the Job Corps Center Project.  Nagan's President and CEO, as well as other

senior Nagan managers, were aware of the requirement to pay workers the prevailing wage rates

listed in the applicable wage determinations.

28.     However, Nagan knowingly underpaid 20 employees working on the Delano Hall

Project and the Job Corps Center Project and failed to pay them the prevailing wages they were

entitled to based on the nature of the work the employees performed.

29.     Nagan routinely paid its employees the wage rate applicable to "laborer" work —

which typically involves unskilled tasks such as cleaning and transporting materials and

equipment — when in fact the employees had performed skilled work, such as carpentry and

bricklayer tasks.  The prevailing wage rates for carpentry, bricklayer, and other skilled work

were substantially higher than the wage rate for laborer work on both projects. Although Nagan

employees performed some work that was properly classified as laborer work, they also

performed thousands of hours of skilled work that Nagan misclassified as laborer work, resulting

in a substantial underpayment of wages to these employees.

30.     Nagan employees on the Delano Hall Project complained about being underpaid,

but the company continued to pay them as if they were performing laborer work.

31.     During the course of the Delano Hall Project and the Job Corps Center Project,

Nagan submitted monthly reports to the USMMA and the DOL, respectively, requesting

payment and describing the work performed during the month. Along with these requests for

payment, Nagan attached weekly certified payrolls reflecting the names of the employees who

worked on each project that week, the hours they worked, their rate of pay, their gross and net

wages, and their work classification.

32.     The certified payroll reports included a representation that the wage rates for the

listed workers "are not less than the applicable wage rates contained in any wage determination

incorporated into the contract" and the listed classifications for each worker "conform with the

work he performed."

33.     Nagan regularly submitted false certified payroll reports that misclassified

thousands of hours of skilled work that its employees performed on the Delano Hall Project and

the Job Corps Center Project.

34.     The misclassification of the work is evident from Nagan's own internal records.

For instance, supervisors assigned to the Delano Hall Project and the Job Corps Center Project

prepared daily reports that documented the actual nature of the tasks each employee performed

each day. These reports refer to tasks that clearly fell within the definition of skilled work, such

as carpentry, masonry, painting, or sheet metal work, but were classified as laborer work on the certified payroll reports Nagan submitted to the USMMA and the DOL.

35.     Nagan billed these government agencies for work on a monthly basis and received payment even though it was not complying with the DBA and the terms of the federally-funded contracts.

36.     If the USMMA and the DOL had known that Nagan was failing to comply with the DBA, not paying its employees prevailing wages, and misclassifying the work performed on the certified payroll reports, this would have influenced the agencies' decision to make payments to Nagan during the course of the projects.

37.     In addition, Nagan failed to adequately train its supervisors and managers on how to properly classify work in order to comply with DBA requirements.  Management also failed to implement effective systems and mechanisms to verify that the company properly classified its employees and consistently paid them the correct prevailing wage as required by federal law.

## **FIRST CLAIM**

**Violations of the False Claims Act:   Presenting False Claims for Payment**
**(31 U.S.C. § 3729(a)(1)(A))**

38.     The Government incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

39.     The Government seeks relief against Defendant under 31 U.S.C. § 3729(a)(1)(A).

40.     Through the acts set forth above, Defendant knowingly, or acting with deliberate ignorance or reckless disregard for the truth, presented, or caused to be presented, false or fraudulent claims to the Government for payment, by submitting false or fraudulent payment requests that falsely represented compliance with the DBA and prevailing wage requirements and that misclassified workers.

41.     If the Government had been aware of Defendant's failure to pay prevailing wages, failure to comply with the DBA, and misclassification of work on the certified payroll reports, this would have influenced its decision to make the payments.

42.     By reason of these false or fraudulent claims, the Government has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a civil penalty for each violation.

## SECOND CLAIM

### Violations of the False Claims Act:  Use of False Statements

### (31 U.S.C. § 3729(a)(1)(B))

43.     The Government incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

44.     The Government seeks relief against Defendant under 31 U.S.C. § 3729(a)(1)(B).

45.     Through the acts set forth above, Defendant knowingly, or acting with deliberate ignorance or reckless disregard for the truth, made, used, and/or caused to be made and used, false records and statements material to the payment of false or fraudulent claims by the Government.

46.     Defendant made, used, and/or caused to be made and used, numerous records and false statements, including false statements regarding compliance with the DBA and prevailing wage requirements and false worker classifications in certified payroll reports.

47.     By reason of these false records and statements, the Government has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a civil penalty for each violation.

## PRAYER FOR RELIEF

WHEREFORE, the Government respectfully requests judgment to be entered in its favor

against Defendant as follows:

a.      For a sum equal to treble damages and civil penalties to the maximum amount

allowed by law; and

b.      Granting the Government such further relief as the Court may deem proper.


Dated:   July 30, 2019
         New York, New York


                          GEOFFREY S. BERMAN
                          United States Attorney for the
                          Southern District of New York

            By:   _____
                          JEFFREY K. POWELL
                          Assistant United States Attorney
                          86 Chambers Street, Third Floor
                          New York, New York 10007
                          Telephone:  (212) 637-2706
                          Email: Jeffrey.Powell@usdoj.gov
                          *Attorney for the United States of America*