UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____                   │
│ DATE FILED:  3/18/2021               │
└─────────────────────────────────────┘
```

UNITED STATES OF AMERICA and STATE OF NEW
YORK *ex rel.* SONER YASTI,

      Plaintiffs,

   -against-

NAGAN CONSTRUCTION and NADIR UYGAN,

      Defendants.

17 Civ. 7163 (AT)

ANALISA TORRES, District Judge:

Relator, Soner Yasti, moves pursuant to 31 U.S.C. § 3730(d)(1) for an order awarding attorneys' fees and costs. Relator Mem., ECF No. 34. For the reasons stated below, Relator's motion is GRANTED in part and DENIED in part. Relator is awarded $250,886.25 in attorneys' fees and $8,777.48 in costs, for a total award of $259,663.73.

## BACKGROUND

On September 20, 2017, Relator initiated this action against Defendants Nagan Construction, Inc. and Nadir Uygan under the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA") and the New York State False Claims Act, N.Y. State Fin. §§ 187 *et seq.* (the "NYFCA").[1] Compl. ¶¶ 63–87, ECF No. 18. Relator alleged that Defendants violated the FCA and NYFCA by (1) underpaying their employees in violation of federal and state laws, while falsely certifying to the federal and state governments that they had complied with the statutory requirements, and (2) underpaying their taxes. *Id.*

On August 2, 2019, the federal government intervened in the action in accordance with the FCA. ECF Nos. 22–23. Shortly thereafter, the parties filed settlement agreements between

---

[1] In accordance with the FCA, Relator filed the complaint under seal. ECF No. 1; Relator Mem. at 2 n.1, ECF No. 34. The complaint was unsealed on August 2, 2019. ECF No. 17.

Defendants, Relator, and the federal and state governments, stipulating that Defendants would pay $435,000 to the federal government, and $396,000 to the state government.  ECF No. 24 ¶ 3; ECF No. 35-3 ¶ 18.  Relator would receive twenty percent of both the state and federal recovery. ECF No. 25 ¶ 1; ECF No. 35-3 ¶ 20.  These agreements explicitly excluded the issue of Relator's attorneys' fees and costs.  ECF No. 24 ¶ 19; ECF No. 27.

Shortly thereafter, in August 2019, Relator provided Defendants with a report of its attorneys' fees and costs, requesting $322,425.50 in attorneys' fees for time billed until June 28, 2019 (the "August Report").[2]  Marcuse Decl. ¶ 6, ECF No. 35; Def. Opp'n at 3, ECF No. 49.  On October 15, 2019, Defendants counteroffered $30,000.  ECF No. 43-1 at 2.  On October 22, 2019, Relator replied with a counter-demand.  Marcuse Decl. ¶ 7.  In January 2020, with no further progress made, the parties agreed to mediation to resolve the dispute, and the mediation was scheduled for March 13, 2020.  *Id.* ¶ 9.  The mediation did not go forward as scheduled.  *Id.* ¶¶ 11–12.  The parties eventually attended the mediation on April 20, 2020, but it was unsuccessful.  Marcuse Reply Decl. ¶ 4, ECF No. 51.  Defendants extended a second settlement offer of $150,000 in May 2020.  *Id.*

---

[2] Relator objects to Defendants entering into the record the August Report and certain other records submitted in advance of the mediation, ECF No. 45-4 (the "March Report"), arguing that they are inadmissible under Federal Rule of Evidence 408 and, in the case of the March Report, that its disclosure violated the mediation agreement signed by the parties, and asks the Court to strike these docket entries.  Relator Reply at 13 n.11, ECF No. 50.  Rule 408 makes inadmissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction . . . conduct or a statement made during compromise negotiations about the claim," though the court "may admit this evidence for another purpose."  Defendants offer the August and March Reports not to prove the validity or amount of the claim itself, which has already been settled, but to demonstrate that the attorneys' fees sought are unreasonable, and they are, therefore, admissible for that purpose. *See Monsour v. New York State Off. for People with Developmental Disabilities*, No. 13 Civ. 336, 2018 WL 3349233, at *15 n.20 (N.D.N.Y. July 9, 2018); *Harty v. Bull's Head Realty*, No. 11 Civ. 1760, 2015 WL 1064630, at *4–5 (D. Conn. Mar. 11, 2015).  However, the mediation agreement provides that "offers, promises, conduct and statements" made in the mediation process "(a) will not be disclosed to third parties except persons associated with the participants in the process, and (b) are privileged and inadmissible for any purposes, including impeachment, under Rule 408 of the Federal Rules of Evidence."  *Mediation Agreement*, JAMS ¶ III, https://www.jamsadr.com/files/Uploads/Documents/MediationAgreement.docx (last visited Mar. 18, 2021); Marcuse Reply Decl. ¶ 5.  The disclosure of the March Report violates section (a) of this provision.  The Court does not base any of its opinion on the substance of the March Report, and thus strikes it from the record.  *Amsale Aberra LLC v. David's Bridal Inc.*, No. 06 Civ. 5147, 2008 WL 11395573, at *2 (S.D.N.Y. Dec. 24, 2008).

On April 1, 2020, Relator moved for attorneys' fees and costs, seeking $331,577.50 in attorneys' fees as of February 20, 2020,[3] and $8,777.48 in litigation expenses.  Relator Mem. at 9, 16.  Defendants contend that Relator should be awarded $130,000 in fees and $4,877.48 in costs.  Def. Opp'n at 3–4; Kutil Decl. ¶ 4, ECF No. 46.

## DISCUSSION

### I.   Legal Standard

The False Claims Act authorizes the award of reasonable attorneys' fees and costs to a relator.  31 U.S.C. § 3730(d)(1).  "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Dancy v. McGinley*, 141 F. Supp. 3d 231, 235 (S.D.N.Y. 2015) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) (alteration omitted).  A court's calculation of "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee."  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and citation omitted).  "The reasonable hourly rate is the rate a paying client would be willing to pay."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).  In calculating that rate, the court must "bear in mind *all* of the case-specific variables . . . relevant to the reasonableness of attorney's fees."  *Id.*  These include:

> the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[3] Relator requests to supplement this petition with fees incurred after February 2020.  Relator Mem. at 9 n.6.

*Id.* at 186 n.3; *see id.* at 191.  There is a presumption that "a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally," and so in ordinary circumstances courts may rely on typical fees within the district as a measure of reasonableness.  *Id.* at 191.

In determining the number of hours reasonably expended, courts must consider both "contemporaneous time records specifying, for each attorney, the date, hours expended, and nature of the work done," *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2011) (internal quotation marks, citation, and alterations omitted), as well as "its own familiarity with the case and . . . its experience generally as well as . . . the evidentiary submissions and arguments of the parties," *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotation marks and citation omitted).  Courts may reduce the fee award requested in some circumstances, such as when plaintiffs submit deficient or incomplete billing records, *see Hensley*, 461 U.S. at 437 n.12, or in order to exclude "excessive, redundant, or otherwise unnecessary hours," *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Once the lodestar is calculated, it may be adjusted only "when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  *Millea*, 658 F.3d at 167 (internal quotation marks and citation omitted).  The Second Circuit has instructed, however, that "such adjustments are appropriate only in rare circumstances," and "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself," but rather "only by factors relevant to the determination of reasonable attorneys' fees that were not already considered in the initial lodestar calculation."  *Id.* (internal quotation marks and citation omitted).

II.     Reasonable Hourly Rate

Relator's legal team consisted of ten individuals: attorneys Deborah Marcuse, Edward Feinstein, Ross Brooks, Inayat Hemani, Lila Miller, and Whitney Barth, and legal assistants Martin Carlino, Natalie Chew, Maya Inamura, and Anne Rojas.[4]  Marcuse Decl. ¶¶ 17–25. Relator requests hourly rates of $850 for Marcuse, Feinstein, and Brooks, $750 for Hemani, $425 for Miller, $400 for Barth, and $150 for Carlino, Chew, Inamura, and Rojas.  Relator Mem. at 9.

A.     Law Firm Partners

For the majority of this case, Marcuse was a partner at Feinstein Doyle Payne Kravec, LLP ("FDPK").  Marcuse Decl. ¶ 17.  She joined Sanford Heisler Sharp, LLP ("Sanford") in February 2019. *Id.* ¶ 2; Relator Time Sheets, ECF No. 35-1 at 18.  Marcuse graduated from Yale Law School in 2008, and is a nationally recognized expert in employment law.  Marcuse Decl. ¶ 17.

Feinstein, a founding partner of FDPK, specializes in employment and whistleblower cases. *Id.* ¶ 18; *Edward J. Feinstein*, Feinstein Doyle Payne & Kravec LLC, https://www.fdpklaw.com/our-lawyers/edward-j-feinstein/ (last visited Mar. 18, 2021).  He graduated from the Boston College Law School in 1973.  Edward Feinstein, LinkedIn, https://www.linkedin.com/public-profile/in/edward-feinstein-768a2610 (last visited Mar. 18, 2021).

Brooks was a partner at Sanford during the pendency of the litigation.  Marcuse Decl. ¶ 20.  Sanford specializes in employment law, particularly in the overlap between employment and whistleblower claims, and has been nationally recognized for its work in that area. *Id.* ¶¶ 14–16.  During the action, Brooks led Sanford's *qui tam* practice. *Id.* ¶ 20.  He graduated

---

[4] Additional legal assistants worked sporadically on the action, but Relator voluntarily discounted their time, and therefore they are not included in this list.  Marcuse Decl. ¶ 26.

from the University of Chicago Law School in 1997, and has been practicing exclusively in the whistleblower field since 2006.  *Id.*

Relator requests an $850 hourly rate for Marcuse, Feinstein, and Brooks, on the basis of recent FCA cases approving similar rates.  Relator Mem. at 11; Notice of Supplemental Auth., ECF No. 52.  Defendants argue that these rates are excessive, citing a recent case brought under the Fair Labor Standards Act ("FLSA") that awarded a $400 hourly rate for partners.  *See* Def. Opp'n at 8; *Argudo v. Maletona Corp.*, No. 18 Civ. 6017 (S.D.N.Y.), ECF No. 196.  Defendants' reliance on *Argudo*, however, is misplaced.  Although the underlying fraud related to underpayment of workers, this matter was investigated, brought, and settled under the FCA and NYFCA, not the FLSA.  The Court, therefore, looks to FCA cases to determine reasonable rates.

Recent cases brought under the FCA in this district have found to be reasonable hourly rates for law firm partners ranging from $800 to $850.  *See United States ex rel. Nichols v. Computer Scis. Corp.*, No. 12 Civ. 1750, 2020 WL 6559194, at *5 (S.D.N.Y. Nov. 9, 2020); *United States ex rel. Wood v. Avalign Techs., Inc.*, No. 14 Civ. 4958, 2020 WL 2555115, at *6–7 (S.D.N.Y. May 20, 2020); *United States, ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12 Civ. 275, 2015 WL 1726474, at *3 (S.D.N.Y. Apr. 15, 2015).  The partners in these cases had a considerable amount of experience, ranging from fifteen to over forty years of practice.  *See Nichols*, No. 12 Civ. 1750, ECF No. 196 (concluding an hourly rate of $850 was reasonable for a partner with twenty-nine years of experience); *Wood*, No. 14 Civ. 4958, ECF No. 27 ¶¶ 6, 8, 10 (finding an $800 hourly rate reasonable for two lead partners with fifteen and over forty years' experience); *Fox Rx*, 2015 WL 1726474, at *2 (finding an $836 hourly rate reasonable for a partner with over twenty years' experience).

The Court concludes the partners here most analogous to those in *Wood*: Marcuse, whose

hours make up the majority of the partners' time, had been practicing for approximately ten years when this case settled, and Feinstein and Brooks have had decades of experience.  Therefore, the Court finds an hourly rate of $800 is reasonable for Marcuse, Brooks, and Feinstein.

        **B.**      **Hemani**

Hemani is currently Senior Litigation Counsel and Co-Chair of Sanford's Whistleblower and Qui Tam practice.  Marcuse Decl. ¶ 19.  He graduated from New York University School of Law in 2012.  *Id.*  Before joining Sanford, he had a one-year fellowship in the New York Attorney General's Office, prosecuting FCA cases.  *Id.*; Inayat Ali Hemani, LinkedIn, https://www.linkedin.com/in/inayat-ali-hemani-49090518 (last visited Mar. 18, 2021).

Relator requests a $750 hourly rate for Hemani.  Defendants contend that this rate is unreasonable, as Hemani began the case with minimal experience, and ask the Court to apply a historical rate to his hours.  Def. Opp'n at 8–9.

The Court agrees that a lower rate is appropriate for Hemani.  Although it is "far more customary for courts in this district to calculate the lodestar using current rather than historic hourly rates," *Ravina v. Columbia Univ.*, No. 16 Civ. 2137, 2020 WL 1080780, at *7 (S.D.N.Y. Mar. 6, 2020) (internal quotation marks and citation omitted), that proposition reflects changes in customary rates, rather than changes in attorney experience.  Therefore, where an experienced attorney's rates change because the rate for attorneys of her experience has increased over that time, that attorney's time should be billed at her current rates.  *See, e.g.*, *Murray v. UBS Sec., LLC*, No. 14 Civ. 927, 2020 WL 7384722, at *13 (S.D.N.Y. Dec. 16, 2020).  However, where an attorney's rates change because they have "gained experience throughout the course of a protracted litigation, courts often base timekeeper's reasonable hourly rates on the average of their . . . level of experience over the course of the litigation."  *United States ex rel. Bisk v.*

*Westchester Med. Ctr.*, No. 06 Civ. 15296, 2016 WL 8254797, at *5 (S.D.N.Y. Aug. 5, 2016) (internal quotation marks and alterations omitted) (quoting *Walker v. City of New York*, No. 11 Civ. 314, 2015 WL 4568305, at *7 (E.D.N.Y. July 28, 2015)). The court then applies this "blended rate" to all hours billed. *Id.*

Here, Hemani began the action with four years of experience, and currently has eight years of experience. Though historic rates are not offered, Relator currently requests $400 for an associate with one year's experience, and $425 for an associate with two years' experience. *See infra* § II.C. Other similar cases have found rates between $425 and $500 reasonable for associates, $541 reasonable for a fourth-year associate, and up to $631.75 for an eighth-year associate. *Nichols*, 2020 WL 6559194, at *5; *Wood*, 2020 WL 2555115, at *6–7; *Fox Rx*, 2015 WL 1726474, at *3. The Court therefore creates a blended rate for Hemani, averaging the rates for a fourth- and eighth-year associate, and taking into account Hemani's leading role in this successful action and his subsequent elevation to co-chair of the whistleblower practice group, reflecting his expertise in this area of law. Accordingly, the Court will apply an hourly rate of $600 for Hemani.

C.      Associates and Paralegals

Relator also seeks hourly rates of $400 and $425 for Barth and Miller, respectively. Relator Mem. at 9. Barth, a litigation fellow at Sanford, graduated from the University of Chicago Law School in 2019. Marcuse Decl. ¶ 21. Miller was an associate at FDPK, and graduated from Stanford Law School in 2014. Marcuse Decl. ¶ 18; Lila Miller, LinkedIn, https://www.linkedin.com/in/lila-miller-237a7424/ (last visited Mar. 18, 2021). Defendants do not object to these rates, and courts have previously found $425 to $500 hourly rates reasonable for associates. Therefore, the Court will use these rates for Barth and Miller.

In addition, Relator seeks rates of $150 for legal assistants Carlino, Chew, Inamura, and Rojas.  Def. Opp'n at 9; Marcuse Decl. ¶¶ 22–25.  Defendants do not object to this rate, and the "prevailing rate" for paralegals in this district is between $100 and $200 per hour.  *TufAmerica Inc. v. Diamond*, No. 12 Civ. 3529, 2016 WL 1029553, at *6 (S.D.N.Y. Mar. 9, 2016); *see also Nichols*, 2020 WL 6559194, at *5.  Therefore, the Court concludes $150 is a reasonable hourly rate for the paralegals.

III.    <u>Reasonable Hours Worked</u>

Relator submits the following hours worked: Marcuse, 79.5 hours; Brooks, 50.6 hours; Feinstein, 1.8 hours; Hemani, 234.8 hours; Barth, 1.8 hours; Miller, 4.9 hours; Carlino, 29.5 hours; Chew, 41.9 hours; Inamura, 165.5 hours; and Rojas, 33.5 hours.  Relator Mem. at 9; Relator Time Sheets.  Defendants contest the reasonableness of those hours on a number of grounds.

A.    Duplicative Time

First, Defendants contend that multiple attorneys billed for tasks where one would have sufficed.  Def. Opp'n at 5–7.  Defendants particularly point to meetings attended by three lawyers.  Kutil Decl. ¶¶ 17–21.

A court may discount attorneys' time "where the attorneys essentially duplicated each other's efforts."  *Etna Prods. Co., Inc., v. Q Marketing Grp., Ltd*., No. 03 Civ. 385, 2005 WL 2254465, at *3–4 (S.D.N.Y. June 6, 2005) (quoting *Carrero v. N.Y.C. Hous. Auth*., 685 F. Supp. 904, 908 (S.D.N.Y.1988), *aff'd*, 890 F.2d 569 (2d Cir. 1989)); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 341 (S.D.N.Y. 2016) (discounting time where attorneys spent a disproportionate amount of time conferring, and sent three attorneys to a pre-motion conference).  However, it is not *per se* unreasonable for a senior attorney to

review a junior attorney's work, or for multiple attorneys to attend an internal or external

meeting to collaborate.  *See Etna. Prods. Co.*, 2005 WL 2254465, at *3–4; *Hutchinson v.*

*McCabee*, No. 95 Civ. 5449, 2001 WL 930842, at *3 (S.D.N.Y. Aug. 15, 2001).  For instance,

multiple attorneys may be necessary at critical points in a litigation, or where each made a

distinct contribution.  *Danaher Corp. v. Travelers Indem. Co*., No. 10 Civ. 121, 2015 WL

1647435, at *5 (S.D.N.Y. April 14, 2015); *Williamsburg Fair Hous. Comm. v. Ross-Rodney*

*Hous. Corp*., 599 F. Supp. 509, 518 (S.D.N.Y. 1984).

      Here, many of the allegedly duplicative entries constitute permissible internal

collaboration, at which it was reasonable for the team to discuss strategy, or where a senior

attorney reviewed a junior attorney or legal assistant's work.  *See, e.g.*, Def. Objections, Row

Refs. 114–15, 158–60, 206–07, ECF No. 46-4.  Because the action required knowledge of both

employment and FCA law, this collaboration was crucial.  Relator Reply at 5–7, ECF No. 50.  In

addition, it is reasonable that two senior attorneys and one junior attorney would prepare the

client and attend the first meeting with the government, particularly when that constituted a

partner at one firm, and a partner and junior attorney at another.  *See* Def. Objections, Row Refs.

221–30; *Rozell v. Ross–Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (determining that it

was not unreasonable for multiple attorneys to attend proceedings at "the most critical points in

the litigation, such as the depositions of key witnesses").

      However, at other points, it appears that multiple lawyers and a legal assistant would

attend calls where this collaboration is not clearly necessary, such as updating the client on the

case status.  *See, e.g.*, Def. Objections, Row Refs. 340–42, 381–83.  Therefore, though the Court

does not believe the amount of discounting requested by Defendants is required, a portion of

Relator's hours are duplicative, and should accordingly be reduced.  *See Tucker v. City of New*

*York*, 704 F. Supp. 2d 347, 355–56 (S.D.N.Y. 2010).  Because this appears to be an instance where much of the duplicativeness arose from a co-counsel relationship where the "duplication of effort was inevitable, if unintentional," the Court will reduce the award by a modest five percent.  *LV v. N.Y.C Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010).

        B.      Administrative Work and Vague Time Entries

Defendants next object to hours billed for "administrative work," including the majority of the work performed by paralegals.  Def. Opp'n at 9–10; Def. Objections.

Courts in this district generally award fees for time spent on paralegal tasks, such as filing, preparing documents for filing, making arrangements for service, and drafting documents. *N.Y. Youth Club v. Town of Harrison*, No. 12 Civ. 7534, 2016 WL 3676690, at *6 (S.D.N.Y. July 6, 2016); *HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 721 (S.D.N.Y. 2018), *as amended* (June 18, 2018); *Tatum v. City of New York*, No. 06 Civ. 4290, 2010 WL 334975, at *9 (S.D.N.Y. Jan. 28, 2010) (reimbursing such activities at a paralegal rate even when performed by attorneys).  However, when the work is "purely clerical," it is not recompensable regardless of who performs it.  *Finch v. Saul*, No. 17 Civ. 892, 2020 WL 1940308, at *6 (S.D.N.Y. Apr. 22, 2020).  Purely clerical tasks include scanning, downloading and internally filing documents, organizing files and discovery documents, calendaring due dates, and scheduling conferences. *Id.*; *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2015 WL 4006896, at *9 (S.D.N.Y. July 1, 2015); *Lavin-McEleney v. Marist Coll.*, No. 96 Civ. 4081, 1999 WL 33500070, at *4 (S.D.N.Y. Sept. 28, 1999), *aff'd*, 239 F.3d 476 (2d Cir. 2001).  When administrative tasks are "included in the interest of completeness, rather than constituting a significant component of the time billed for" in a time entry, however, the Court will not discount that time entry.  *Ekukpe v. Santiago*, No. 16 Civ. 5412, 2020 WL 1529259, at *6 (S.D.N.Y. Mar. 31, 2020).

Much of the paralegals' time to which Defendants object is recompensable as paralegal tasks. *See, e.g.*, Def. Objections, Row Refs. 113 ("Review and edit disclosure statement"), 136 ("Prepare and mail documents for disclosure statement"), 301 ("Review documents; call with client"), 416 ("Relator meeting; transcribe notes from meeting into word doc"). The Court will award fees at a paralegal rate for work such as this—preparing documents for service or important meetings, filing or serving documents, attending client meetings, document review, or drafting or editing documents. *N.Y. Youth Club*, 2016 WL 3676690, at *6.

However, other time entries reflect purely clerical work—including time entered by attorneys. For instance, the time spent scheduling calls, organizing documents, and making travel arrangements are not recompensable. *See, e.g.*, Def. Objections, Row Refs. 73 ("Emails regarding scheduling call"), 214 ("Organize certified mail receipts and case documents"); 277 ("Arrange travel to second relator meeting"). Therefore, the time spent on these tasks will be discounted. *Shabazz v. City of New York*, No. 14 Civ. 6417, 2015 WL 7779267, at *4 (S.D.N.Y. Dec. 2, 2015).

Defendants next object to certain allegedly vague entries. Def. Opp'n at 10–11. "[T]he Court may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did." *Dixon v. Agbai*, No. 15 Civ. 850, 2016 WL 3702749, at *17 (S.D.N.Y. July 8, 2016) (collecting cases), *report and recommendation adopted*, 2016 WL 5660246 (S.D.N.Y. Sept. 28, 2016); *Tucker*, 704 F. Supp. 2d at 356 (holding as "plainly inadequate" vague entries such as "'conference with' or 'call to' a specified person . . . [and] time entries that refer to unspecified communications with unidentified 'outside counsel' or 'colleagues.'" (internal citations omitted)). However, a court may look to context to determine what work was being performed in an otherwise vague time entry. *Tran v. Tran*, 166 F. Supp. 2d

793, 800 (S.D.N.Y. 2001).

Many of the objected-to entries are either sufficiently concrete, or context permits the Court to determine what work was done.  For instance, Defendants object to Hemani's November 2, 2016 entry, "Research and review of contracts; emails regarding same."  Def. Opp'n at 11.  However, in context, it is clear he is reviewing and conducting supplemental research on the "federal contract bid language" that Miller conducted a few days earlier.  Def. Objections, Row Reference 45.  Similarly, Defendants object to entries such as "Exchange emails with DOJ and team re settlement," Def. Objections, Row Reference 457, but the topic and relevance of that entry is clear.  Other entries, however, such as "team emails" or "emails to client and attorneys" are too vague for the Court to determine the relevance of those emails.  *See, e.g.*, Def. Objections, Row Refs. 308–09.  These vague time entries will therefore be discounted.

The Court has reviewed Relator's time records, and calculates that the entries that are clerical or vague constitute approximately five percent of the entries.  Therefore, the Court will discount Relator's award by five percent.  *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (permitting "percentage cuts as a practical means of trimming fat from a fee application."); *TufAmerica Inc.*, 2016 WL 1029553, at *4 (reducing attorneys' fees by five percent for vague entries where "the majority of the attorneys' time appears to be well-documented and accounted for in detail.").

C.     Travel Time

Defendants also object to the inclusion Marcuse's time travelling to New York for meetings with the government.  Def. Opp'n at 7–8.  Although it was reasonable for the lead partner to be included at the meeting, and thus the time should be included, courts in this district generally discount travel time by one half.  *Bisk*, 2016 WL 8254797, at *11.  Therefore, the

Court shall discount all travel time, both of Marcuse and of the paralegals, by fifty percent.

> D.      Non-Contemporaneous Records

Defendants call into doubt all of Relator's time entries, noting that the August Report requested $47,408.00 more than the report submitted to the Court, and arguing that this suggests the time entries were not contemporaneous.  Def. Opp'n at 3.  However, Relator has explained that the majority of this difference is due to the lowering of paralegal hourly rates from the originally requested $295 or $275 to $150, and removing paralegals who only worked on the case occasionally.  Marcuse Reply Decl. ¶ 7.  The remaining time was due to errors in Marcuse's time entries, amounting to $9,180.  *Id.* ¶ 8.  Relator has been transparent about these edits, the majority of which Relator appears to have made in response to Defendants' original objections to the paralegal rate.  Uygan Decl. Ex. 3, ECF No. 45-3.  Accordingly, the difference between the August Report and the time sheets submitted to the Court provides no basis for the conclusion that the documents are not contemporaneous.  *See Harty v. Bull's Head Realty*, No. 11 Civ. 1760, 2015 WL 1064630, at *6 (D. Conn. Mar. 11, 2015).

> E.      Fees on Fees

Defendants make three objections to the time entries related to the fee reports and motion.  First, Defendants state that because they made a settlement offer which Relator rejected, any time spent negotiating that settlement should not be recovered.  Kutil Decl. ¶ 32.  Because the offer was made after February 20, 2020, the relevant entries are not included in these reports, and, therefore, the Court cannot evaluate them here.  More importantly, however, there is no evidence Relator was negotiating the settlement in bad faith, even if the negotiations were unsuccessful.  Therefore, the settlement offer does not preclude recovery on those fees.  *Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 Civ. 6441, 2003 WL 21976400, at *6 (S.D.N.Y. Aug. 19,

2003), *aff'd sub nom. Auscape Int'l v. Nat. Geographic Soc'y*, No. 02 Civ. 6441, 2003 WL 22244953 (S.D.N.Y. Sept. 29, 2003); *Sugarman v. Vill. of Chester*, 213 F. Supp. 2d 304, 311–12 (S.D.N.Y. 2002).

Second, Defendants seem to argue that because the August Report had errors, any fees with respect to negotiation or mediation based on those records should be excluded.  Def. Opp'n at 3.  Defendants do not cite any authority for this proposition.  Moreover, as discussed, many of the revisions were reductions of the paralegal rates and hours, possibly in response to Defendants' objections to the August Report.  Relator Reply at 13 n.12; Uygan Decl. Ex. 3.  The amount attributable to error was approximately $10,000 out of a requested award of over $331,000, just over three percent of the requested award.  There is no evidence that this error was committed in bad faith, or that it affected settlement negotiations or the mediation and, therefore, there is no evidence that Defendants suffered any prejudice.  Accordingly, the Court will not discount this time.  *Cf. Auscape Int'l*, 2003 WL 21976400, at *6.

Finally, Defendants appear to object to the amount of time spent revising the time records, particularly as errors remained in the August Report.  Def. Opp'n at 3, 11. By the Court's rough calculation, Relator's legal team spent twenty-four hours gathering and reviewing the reports, which amount to twenty-six pages of entries.  Relator Time Sheets.  Despite these twenty-four hours, not insubstantial errors remained, indicating that perhaps the review was not as efficient as possible.  However, any inefficiency is accounted for in the reduction for duplicative, and thus inefficient, time.

F.      Pre-Retention Letter Time Entries

Finally, Defendants object to the inclusion of time before the retainer agreement between Relator and his counsel was executed in August 2016, a period of approximately two months.

Def. Opp'n at 12; Relator Time Sheets at 1–2.  "Courts have consistently held that fee-shifting statutes allow compensation for services rendered before a representation agreement was executed. . . . [T]he relevant question is whether the time was 'reasonably expended on the litigation.'"  *Fabela v. City of Farmers Branch, Tex.*, No. 10 Civ. 1425, 2013 WL 2655071, at *6 (N.D. Tex. June 13, 2013) (quoting *Webb v. Bd. Of Educ. Of Dyer Cty., Tenn.*, 471 U.S. 234, 242 (1985)); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 437–38 (S.D.N.Y. 2012).  Relator's counsel used the majority of the time before the execution of the retainer agreement for research into the case theory and document review—tasks related to the litigation.  *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 10 Civ. 01397, 2014 WL 3546858, at *11 (D. Or. July 15, 2014) (permitting recovery of "investigative tasks" such as "conferences with the client . . . [,] reviewing the administrative record, investigating and researching potential claims, conferences with witnesses, drafting declarations related to standing, and drafting the complaint.").  This time, therefore, will not be excluded.

IV.     Calculation of Fees

Based on the findings above, the fees owed to Relator can be calculated as follows. Marcuse is credited with 66.5 hours (79.5 hours with the 26 hours spent travelling counted at half the time) at an hourly rate of $800, totaling $53,200.  Feinstein is credited with 1.8 hours at an hourly rate of $800, amounting to $1,440.  Brooks is credited with 50.6 hours at an hourly rate of $800, producing a total of $40,480.  Hemani is credited with 234.8 hours at an hourly rate of $600, totaling $140,880.  Barth is credited with 1.8 hours at an hourly rate of $400, amounting to $720.  Miller is credited with 4.9 hours at an hourly rate of $425, for a total of $2,082.50.  The paralegals are, together, credited with 266.4 hours (270.4 hours with eight hours spent travelling

counted at half the time), at an hourly rate of $150, totaling $39,960. In total, therefore, the base award is $278,762.50. After discounting the base amount by five percent for duplicative time and five percent for vague entries and clerical work, the award amounts to $250,886.25.

Accordingly, Relator is awarded $250,886.25 in attorneys' fees.

V.    Costs

Relator also seeks $8,777.48 in litigation expenses, the bulk of which consists of travel costs, the mediation fee, and filing fees. Relator Mem. at 17; ECF No. 35-2. Defendants object only to inclusion of the mediation fee, for the same reason they object to the inclusion of the attorneys' fees for preparing for mediation. Def. Opp'n at 3; Kutil Decl. ¶ 4.

The types of charges listed by Relator are generally recoverable. *See Douglas v. Anthem Prods., LLC*, No. 18 Civ. 5789, 2020 WL 2631496, at *6 (S.D.N.Y. May 26, 2020). And for the same reasons Relator's fees related to the mediation are recoverable, the cost of the mediation is recoverable as well. *See supra* § III.E.

Accordingly, Relator is awarded $8,777.48 in costs.

## CONCLUSION

Relator's motion for attorneys' fees is GRANTED in part and DENIED in part. Relator is awarded $250,886.25 in attorneys' fees and $8,777.48 in litigation expenses, for a total award of $259,663.73. By **April 18, 2021**, Relator shall submit a supplemental motion for attorneys' fees and costs incurred after February 2020.

The Clerk of Court is directed to terminate the motion at ECF No. 34.

SO ORDERED.

Dated:  March 18, 2021
          New York, New York

_____
ANALISA TORRES
United States District Judge